**HOUSTON PEACE COALITION et al.**
v.
**HOUSTON CITY COUNCIL et al.**
**Civ. A. No. 70–H–216.**

United States District Court,
S. D. Texas,
Houston Division.

March 13, 1970.

Supplemental Memorandum and Order
March 19, 1970.

David Berg, Houston, Tex., for plaintiffs.

Homer Bouldin, City. Atty., Houston, Tex., for defendants.

*Memorandum and Order*

SINGLETON, District Judge.

Jurisdiction of this Court is clearly invoked not only by virtue of the engrafting upon State action, First Amendment privileges through the Fourteenth Amendment, but moreover by a clear Congressional intent expressed in 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343, which statutes have been clearly and expressly upheld and discussed by the Supreme Court of the United States and the Fifth Circuit Court of Appeals. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Gomez v. Florida State Employment Services, 417 F.2d 569 (5th Cir. 1969).

Simply stated, the facts in this case are as follows: Plaintiffs in a letter dated February 26, 1970, and received by the City February 28, 1970, requested permission to conduct a parade through the streets of downtown Houston. The requested beginning time for the parade was 4:00 P.M. On March 4, 1970, City Council passed a motion denying the requested permit "inasmuch as it does not conform to the City's policy." A copy of this motion was purportedly sent to the applicant. The provisions of the City Code dealing with Parades and Processions that was in effect at this time provided in part: "It shall be unlawful for any number of persons, delegations or associations of persons, or for any company, circus or group, to parade the streets of the City without first having obtained a written permit to do so. If the parade is to be held within the downtown area, * * * such permit shall be obtained from the City Council." The regulations go on to provide that parades

shall not be held in the downtown area during specified times. The period between the hours of 3:30 P.M. and 6:00 P.M. are prohibited except on Sundays and legal holidays. The downtown area is defined by the regulations.

The notice of City Council's motion and the action taken thereon which was sent to plaintiff did not indicate the basis for City Council's decision. Contemporaneously, with Council's action on plaintiff's application, it has been stipulated that Council approved four other parades for the coming year: A St. Patrick's Day Parade (March 17, 1970); a UH Golfers' Parade (April 18, 1970); a Mexican Independence Day Parade (September 9, 1970) and Foley's Holiday Parade (November 26, 1970). All of these parades are scheduled for the downtown area and all are set for times not within the prohibition of the City Code. At about the same time, or subsequent to these actions by City Council, certain City officials made statements reflecting a policy of the City to discourage politically motivated parades and to limit parades in the downtown area to non-controversial parades, which statement was given widespread publicity by the news media. In light of these pronouncements by City officials and in light of the failure of the notice sent to plaintiff to specify the reasons for denial of plaintiff's permit, plaintiff is in this Court with reason to suspect the good faith of the denial of this permit. In addition, evidence was admitted to show the difficulties encountered by peace groups in receiving parade permits in the past. City officials sought to limit these parades to nothing more than sidewalk processions in which the participants were required to obey all traffic laws and not in any way impede the flow of traffic. No permit is required for this type procession. But since the City has allowed other groups to organize more traditional type parades, it can hardly be allowed to limit plaintiff to a sidewalk procession merely because of the controversial nature of the political thoughts they propose to express.

Certainly, the civil liberties enjoyed by each and every citizen of these United States and constitutionally guaranteed to them, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excess of unrestrained abuses. The authority of a City to impose reasonable regulations to assure the safety and convenience of the people in the use of its streets, sidewalks, and public places is not inconsistent with these civil liberties, but is, on the other hand, one of the means of safeguarding good order upon which these civil liberties ultimately depend. The control of travel on the streets of cities is a familiar illustration of this recognition of social need. Where a restriction of the use of streets and highways in that relation is designed to protect the public convenience in the interest of all it cannot be disregarded. No one would be justified in ignoring a red traffic light because he thought it was his religious duty to disobey this municipal command or sought by that means to direct public attention to an acknowledgment of his opinions. As to reasonable regulations of streets in connection with parades and processions such is a traditional exercise of proper control by local government. "The question in each particular case is whether that control is exerted so as to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and a discussion of public questions immemorially associated with resort to public places." This is a paraphrase of and exact quotation from an opinion by Chief Justice Hughes speaking for a unanimous Supreme Court in 1940 in the case of Cox v. New Hampshire, 312 U.S. 569, 572, 61 S.Ct. 762, 85 L.Ed. 1049. This philosophy has been followed almost throughout the history of the Supreme Court, and as stated by Justice Stewart in Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969):

"Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities,

rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied." (Quoting, with approval, Hague v. C. I. O., 307 U.S. 496, 515–516, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

In the *Shuttlesworth* case, Justice Harlan concurred and wrote a separate opinion. *Id.* 394 U.S. at 159, 89 S.Ct. at 943. Justice Harlan, of course, agreed that a State had a right to pass reasonable rules and regulations regarding the use of its public streets as has just been pointed out, but he was concerned, as was Justice Stewart, in writing the majority opinion, with the expeditious administration of such ordinances. A part of Justice Harlan's concurring opinion emphasized the point I am trying to make: "[T]iming is of the essence in politics. It is almost impossible to predict the political future; and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all. * * * [S]uch applications [for parade permits] must be handled on an expedited basis so that rights of political expressions will not be lost in a maze of cumbersome and slow-moving procedures." *Id.* at 163, 89 S.Ct. at 945.

▉▉▉ Here it is the judgment of this Court that the ordinance in question is constitutionally valid, provided that when a permit is denied constitutionally the denial must be based upon the constitu-

tional grounds that we have discussed, and provided that those applying can have time to readjust their plans to meet the reasonable standards of the ordinance relating to time and place and if they deem it necessary to resort to judicial processes before the issue they hope to publicize is rendered ineffective or moot by reasons of the lapse of too much time. A valid ordinance or statute cannot be used for the purpose of discouraging otherwise protected activities. The deterrent effect of a valid law is not unconstitutionally chilling. It is the bad faith enforcement which gives rise to a constitutional claim.[1] Unless bad faith enforcement is enjoined, people will be deterred from protected conduct. Obviously, any parade policy which would grant or withhold permits based upon the content of the ideas championed by the paraders, is constitutionally indefensible. The publication of such a policy and the misuse of valid regulations to accomplish that policy will clearly have a chilling effect upon the exercise of First Amendment rights, not only by plaintiff, but also by every other citizen who may wish to express a controversial viewpoint. Certainly, here the denial was discriminatory and in a sense arbitrary. The City allows parades for the University of Houston golf team; St. Patrick's Day; Mexican Independence Day; and Foley's Holiday celebration, fairly innocuous concerns, but denies a parade to protest the Viet Nam War. Certainly the City has a right and duty to prescribe the times of day which parades can be held; which times should and no doubt will be consistent with peak period uses of the streets.[2] Likewise, the City officials have a right and duty to prescribe the routes that parades can take,

---

1. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). "We hold the abstention doctrine is inappropriate for cases such as the present one where * * * statutes are justifiably attacked on their face as abriding free expression, *or as applied for the purpose of discouraging protected activities.*" *Id.* at 489–490, 85 S.Ct. at 1122 (Emphasis added). See United States v. McLeod,

385 F.2d 734, 740–741 (5th Cir. 1967). See also Note, 69 Colum.L.Rev. 808 (1969).

2. Possibly, the City could draw a more restrictive parade ordinance that would withstand constitutional attack. But such an ordinance is not before this Court. The present ordinance restricts parades only as to times and routes.

but, however, such times and such routes should and must be consistently and uniformly applied. The City cannot and should not put the golf team and St. Patrick's on Main Street and war protesters on some side street. As just stated, bad faith enforcement gives rise to a constitutional claim. Simply because City officials indicate their views as to a statute or ordinance's scope, it does not follow that the judiciary will come to the same conclusions. As stated by Justice Stewart in *Shuttlesworth*: "Even when the use of its public streets and sidewalks is involved, therefore, a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade according to their own opinions regarding the potential effect of the activity in question on the 'welfare,' 'decency,' or 'morals' of the community." *Id.* 394 U.S. at 153, 89 S.Ct. at 940.

In conclusion, my judicial philosophy in matters of this kind involving as they do a basic constitutional First Amendment freedom of expression and speech was clearly expressed by Thomas Jefferson in 1800: "I have sworn upon the altar of God eternal hostility against every form of tyranny over the mind of man." (Letter to Dr. Benjamin Rush, September 23, 1800, from Monticello.)

A permit will be granted in accordance with a proper and reasonable time, and place, as prescribed by the requisite city officials consistent with this opinion. Certainly, the parade must in every respect be conducted in an orderly manner and the City Police have the duty and obligation to see that such is done and to enforce violations.

Since the proposed parade is to be held on March 19 in connection with some national protest on that day, the granting of the permit as prescribed herein will be performed expeditiously and in time to allow the Houston parade to be held at the applied-for date.

Counsel for plaintiff will draft an appropriate order in accordance with this Memorandum and Order for submission to the Court, after first obtaining the approval of counsel for the City as to form.

*Supplemental Memorandum and Order*

This will constitute an addition to the Memorandum and Order previously issued by this Court relating to the issuance by the City of Houston of a permit permitting plaintiffs herein to parade on March 19, 1970. In accordance with this Court's Memorandum and Opinion the City Council on Wednesday, March 18th, granted plaintiffs herein a permit to parade at a time and within an area prescribed by the City Council in accordance with Article 8, Sections 46–205, 46–206, and 46–207 of the ordinance of the City of Houston, which this Court heretofore held valid and to meet constitutional standards.

■ Plaintiffs are again before this Court with an application for a temporary injunction because the City has required plaintiffs to post a liability insurance policy in accordance with section 46–208 of Article 8, which section reads as follows:

"(a) *Required.* Upon approval by the city council of an application for a parade permit to be held in the downtown area, as defined herein, prior to the issuance of a permit, the applicant therefor shall deliver to the office of the city attorney a comprehensive general liability insurance policy, which may exclude the parade participants, or such applicant may furnish any other evidence of indemnity for the city's protection incident to the holding of any such parade, the form and amount of the liability insurance or indemnity to be approved by the city attorney."

Plaintiffs attack this section of the ordinance on the grounds that same is unconstitutional as placing an undue restraint or burden upon plaintiffs in the exercise of their rights under the First and Fourteenth Amendments to the Constitution, and on the grounds that the same violates the Fourteenth Amend-

ment in that it does not meet the constitutional standards of due process of law.

The testimony in this case consisted of the testimony by one of the city attorneys, Mr. Richard Burkes. In accordance with Mr. Burkes' testimony, at least within the past twelve months each applicant for a parade has been required to post with the City some form of a liability insurance policy with the City of Houston as the named insured. Mr. Burkes testified that the amounts of the policy were set by him in consultation with the city attorney and these amounts varied depending upon circumstances such as the length of the parade, the participants in the parade, whether or not the parade had vehicles or animals, or whether it did not, and factors such as that. Mr. Burke admitted that there were no standards prescribed in the ordinance and that the type of liability insurance, the amount, and other relevant factors were left up to the discretion of the city attorney, and that the city attorney had, under the ordinance, uncontrolled discretion to in effect grant or deny a permit for a parade by imposing the amount and the type of liability insurance required. In fact, Mr. Burkes, in answer to a question by the Court, admitted that the city attorney could, completely within his discretion, set an amount on the insurance policy that would make the premium for such a policy prohibitive to anyone wishing a parade permit, and thereby could effectively deny a permit for a parade to anyone.

The question of whether or not a municipality can impose a "previous restraint" upon the issuance of parade permits in the form of license fees has been before the Supreme Court of the United States, beginning with at least Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1940) and that Court has upheld this type of restraint upon the exercise of freedoms of speech and expression in the form of parades. Here, the ordinance in question does not impose a fee, but instead requires an applicant to deliver to the city attorney a "comprehensive general liability insurance policy" or "any other evidence of indemnity for the City's protection incident to the holding of any such parade." The ordinance vests in the city attorney uncontrolled discretion in the matter of the type of policy, face amount of policy, the form, the exclusions, if any, and other relevant factors. Accordingly, as previously pointed out, the right of an applicant for a parade permit under this section of the ordinance is left to the uncontrolled discretion of the city attorney. As noted by the Supreme Court in Saia v. People of State of New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 "a more effective previous restraint [on First Amendment freedoms of speech and expression] is difficult to imagine."

As previously held by this Court, sections 46–205, 46–206, and 46–207 meet constitutional standards and are constitutionally valid. However, quoting from this Court's opinion, "Even when the use of its public streets and sidewalks is involved, therefore, a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade according to their own opinions regarding the potential effect of the activity in question on the 'welfare,' 'decency,' or 'morals' of the community."

Accordingly, such permits must be based on clear, non-discriminatory, and non-discretionary standards and not based on the unfettered control of any local official. Section 46–208 of the ordinance is unconstitutional in that it does not meet the constitutional standards of due process as set forth in the Fourteenth Amendment to the Constitution in that same vests in the city attorney uncontrolled and unfettered discretion to grant or withhold parade permits without prescribing any standards to guide this city official. Just because the ordinance prescribes that the parade applicant should obtain some type of general liability insurance is not the vice of this section of the ordinance. This Court is certain that the City can im-

pose this type of "previous restraint" upon the issuance of a parade permit, but to be constitutionally valid the ordinance must set forth clear, non-discriminatory and non-discretionary requirements concerning such liability insurance, and the application of this type of requirement must be administered on a non-discriminatory and non-discretionary basis.

Accordingly, plaintiffs' application for a temporary injunction enjoining the City from enforcing section 46–208 of this ordinance will be granted. This Court's previous memorandum opinion and order will remain in full force and effect, amended only by this amendment and supplement to such opinion and order.

Counsel for plaintiffs will draft an appropriate Order in accordance with this Memorandum and Order for submission to the Court.