NORTH SHORE RIGHT TO LIFE COM-
MITTEE, an unincorporated associa-
tion, and Catherine N. Dillon, Individu-
ally and as co-chairman of North Shore
Right to Life Committee, Plaintiffs,

v.

MANHASSET AMERICAN LEGION
POST NO. 304, TOWN OF NORTH
HEMPSTEAD, Michael J. Tully, Jr., In-
dividually and as Supervisor of the
Town of North Hempstead, John S. Da-
Vanso, Individually and as Town Clerk
of the Town of North Hempstead, Jo-
seph Miserendino, Individually and as
Commander of Manhasset American Le-
gion Post No. 304, Defendants.

No. 78 C 1110.

United States District Court,
E. D. New York.

June 9, 1978.

Thomas J. Dillon, Manhasset, N. Y., for plaintiffs.

Joseph A. Guarino, Manhasset, N. Y., for defendants Town of North Hempstead, Michael J. Tully, and John S. DaVanzo; Richard J. Osterndorf, Mineola, N. Y., of counsel.

Malloy, Fletcher, Dunne & Sibell, Manhasset, N. Y., for defendants American Legion & Joseph Miserendino; John P. Dunne, Manhasset, N. Y., of counsel.

WEINSTEIN, District Judge.

Members of the North Shore Right to Life Committee (an anti-abortion group) complain that they have been refused permission to march in a Memorial Day parade organized by American Legion Post Number 304. The First and Fourteenth Amendments mandate that they be permitted to join the parade.

## I. FACTS

The Town of North Hempstead controls most of the streets used by the marchers. While there is no statutory permit system, the practice has been to apply for "permission" to parade. "Consent" is always given. This informal practice alerts the municipality to the need for traffic control, sanitation and other services.

Last year, as it has for many years, the Town granted Post 304 permission to conduct a parade on Memorial Day. The Legion invited various local organizations to participate. Plaintiffs received no invitation and their formal request to join was denied by the Legion on the ground that their involvement would violate the American Legion constitution, requiring the Legion to be "absolutely non-political and . . . not . . . used for the dissemination of partisan principles. . . ." National Constitution, the American Legion, Article II, Section 2. The Right to Lifer's request for an injunction was denied by the New York Supreme Court, Nassau County.

Tradition has it that Memorial Day began after the Civil War when southern women chose May 30 to decorate the graves of soldiers of both the Union and Confederate armies. Union veterans arranged parades in the northern states until 1919 when the American Legion was chartered by Congress. The Legion then began organizing Memorial Day activities; a substantial portion of its Post Commander's Guide is devoted to Memorial Day proceedings.

In the villages in the Town of North Hempstead, Nassau County, on the north shore of Long Island, Memorial Day parades have for many years been the community's major annual event. Markers on Long Island indicate skirmishes in the Revolutionary War. Nearby are graves of those who served in all of our conflicts from the Civil War to Vietnam. Infused with this aura of American history and surrounded by the beauty of spring on Memorial Day, residents pause before plunging into summer activities, put aside their individual problems, and recall together those who gave their lives that we might enjoy this land and its freedoms.

In no sense is this a private procession of the American Legion. It belongs to all the people. Memorial Day is proclaimed by the President. In New York State, statutory provisions prescribe the date (N.Y. General Construction Law § 24 (McKinney 1978)), limit the amount which municipalities may appropriate for celebrations (N.Y. General City Law §§ 12, 13; N.Y. Town Law § 64(12) (McKinney 1978)), and give local governments the power to regulate commercial and business activities on the holiday (N.Y. General Municipal Law § 86 (McKinney 1978)). Proper observance of the day is deemed a "county purpose" in Nassau County. N.Y. County Law § 840 (McKinney 1978).

## II. LAW

### A. *Res Judicata*

Defendants argue that plaintiffs are barred by res judicata since they could have appealed from the adverse 1977 state court decision. Even though the parade had already taken place an appeal was possible. *See Matter of Rosenbluth v. Finkelstein,* 300 N.Y. 402, 404, 91 N.E.2d 581 (1950). Nor would mootness have barred further proceedings in the Supreme Court. A case is not moot if

(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*SEC v. Samuel H. Sloan,* —— U.S. ——, ——, 98 S.Ct. 1702, 1707, 56 L.Ed.2d 148 (1978).

■ Plaintiffs' claims are not barred. The state court records reveal that the contentions now presented were not fully litigated; the state court opinion is devoid of constitutional discussion. This Circuit refuses to apply res judicata where constitutional issues were either not explicitly raised or not fully litigated in state proceedings. *See Winters v. Lavine,* 574 F.2d 46 at 54–56 (2d Cir. 1978); *Turco v. Monroe County Bar Association,* 554 F.2d 515, 520–21 (2d Cir. 1977); *Graves v. Olgiati,* 550 F.2d 1327, 1329 (2d Cir. 1977); *Newman v. Board of Education of the City School District of New York,* 508 F.2d 277, 278 (2d Cir. 1975); *Lombard v. Board of Education of City of City of New York,* 502 F.2d 631, 635–37 (2d Cir. 1974).

B. *Claims Against The Town of North Hempstead*

■ While North Hempstead has no applicable parade ordinance or formal permit system, there is a custom and pattern of conduct with an effect equivalent to that of state action. *Cf.* N.Y. Municipal Home Rule Law § 101.a.(6) (McKinney 1978) (local governments' power to adopt and amend laws relating to use of streets).

The Civil Rights Act itself prohibits deprivation of constitutional rights by "custom or usage" as well as by statute, ordinance, or regulation. 42 U.S.C. § 1983. In *Adickes v. S. H. Kress and Company,* 398 U.S. 144, 169, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970), the Supreme Court interpreted the phrase "custom or usage" to include:

settled practises of state officials . . . imposing sanctions or withholding benefits . . . [which] transform private predilections into compulsory rules of behavior no less than legislative pronouncements. . . .

In an earlier discussion of this subject Justice Frankfurter noted:

It would be a narrow conception of jurisprudence to confine the notion of "laws" to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice cannot supplant constitutional

guarantees, but it can establish what is state law. The equal protection clause did not write an empty formalism into the Constitution. Deeply embedded traditional ways of carrying out state policy, such as those of which petitioner complains, are often tougher and truer law than the dead words of the written text. *Nashville, C. & St. L. R. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

We credit contentions of the town officials that it is a matter of indifference to them whether plaintiffs march in the Memorial Day Parade. Moreover, the testimony of the American Legion makes it clear that the decision to deny plaintiffs permission to participate was not based on considerations in any way related to Town policy or practice.

■ There is no evidence to support plaintiffs' claims that the municipality is acting in concert with the American Legion in depriving plaintiffs of their rights. In the absence of any showing of discriminatory action on the part of the Town, its motion for dismissal of the complaint against it must be granted.

D. *Claims Against the American Legion*

1. *State Action*

In conducting Memorial Day celebrations the American Legion is not acting privately, but as a fiduciary for local governments and residents. The Legion is performing what is essentially a public function.

■ Actions of private individuals may be governmental, and thus subject to constitutional limitation. As the Supreme Court put it:

Conduct that is formally "private" may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action. The action of a city in serving as trustee of property under a private will serving the segregated cause is an obvious example. . . . A town

may be privately owned and managed, but that does not necessarily allow the company to treat it as if it were wholly in the private sector. Thus we held in *Marsh v. State of Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265, that the exercise of constitutionally protected rights on the public streets of a company town could not be denied by the owner. A State is not justified, we said, in "permitting a corporation to govern a community of citizens so as to restrict their fundamental liberties * * *." *Id.,* at 509, 66 S.Ct. at 280. We have also held that where a State delegates an aspect of the elective process to private groups, they become subject to the same restraints as the State. *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 [elections]. That is to say, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.

*Evans v. Newton,* 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1977) (some citations omitted). *See also Jackson v. Metropolitan Edison Company,* 419 U.S. 345 at 351, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974).

Although the "public function" concept has been eroded where freedom of expression on private property is involved (*compare Amalgamated Food Employees Local 590 v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) *with Lloyd Corporation, Ltd. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) and *Hudgens v. N. L. R. B.,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976)), where freedom of expression on public property is at stake, the doctrine remains unimpaired.

As the organizer of a public function on public property, the American Legion is acting as the agent or fiduciary of the municipality. It is subject to obligations and responsibilities under the Constitution and Civil Rights Act. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Glasson v. City of Louisville,*

518 F.2d 899, 906 (6th Cir.), *cert. den.,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Baldwin v. Morgan,* 251 F.2d 780, 786 (5th Cir. 1958); *Bellnier v. Lund,* 438 F.Supp. 47, 50–51 (N.D.N.Y.1977); *Manfedonia v. Barry,* 401 F.Supp. 762, 767–8 (E.D. N.Y.1975). "State action is generally found to exist when what is involved is the exercise of power possessed only because the wrongdoer is clothed with the authority of state law." *Bellnier v. Lund, supra* at 50–51 (citations omitted). In organizing this parade, the American Legion stood in the place of the Town of North Hempstead, clothed with its authority. Its denial of plaintiffs' request constituted state action.

## 2. *First Amendment*

This is a case of first impression. It involves not the right to march in one's own "private" parade, but the right to march with other groups. The discrimination alleged by plaintiff is more subtle than that found in other First Amendment cases dealing with the use of the streets and other public property by a single group.

Exercise of First Amendment rights in the "public forum" of the streets may be subject only to reasonable regulations of "time, place, and manner." *Police Department of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Frank Collin and the National Socialist Party of America v. Albert Smith,* 578 F.2d 1197 (7 Cir. 1978).

Any restriction predicated upon the content of the ideas sought to be espoused by the marchers will not be permitted. *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *United States v. Crowthers,* 456 F.2d 1074 (4 Cir. 1972); *Toward A Gayer Bicentennial Committee v. Rhode Island Bicentennial Foundation,* 417 F.Supp. 632 and 642 (D.R.I.1976); *Houston Peace Coalition v. Houston City Council,* 310 F.Supp. 457 (S.D.Texas 1970).

In the *Bicentennial Committee* case a state body was enjoined from refusing to accept the application of a gay rights com-

mittee to celebrate near a public landmark. The court found that without the Committee's endorsement the group could not meet at the Old State House but only in some "alternative, and presumably less satisfactory, forum." 417 F.Supp. at 645. It declared:

Once a situs is designated a public forum, the power of government to restrict expression therein is extremely circumscribed. The paramount principal is that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. Thus, once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. . . . [R]easonable regulations controlling the "time, place and manner" of expression in a public forum are permissible. . . . However, the regulations must be in furtherance of a substantial governmental interest that has no relation to the First Amendment activity involved.

*Id.* at 638 (citations omitted). *See Gay Students Organization of University of New Hampshire v. Bonner,* 509 F.2d 652, 662 (1 Cir. 1974) (forums made available to some recognized student organizations must be made available to all such organizations on an equal basis); *Bonner-Lyons v. School Committee of the City of Boston,* 480 F.2d 442, 443–44 (1 Cir. 1973) (public school information distribution systems not to be used to disseminate anti-bussing literature unless pro-bussing groups are also provided access).

■ The principal of equal access prevents an otherwise valid ordinance or practice from being applied unequally or unfairly so as to block the expression of certain views. *United States v. Crowthers,* 456 F.2d 1074 (4 Cir. 1972); *Houston Peace Coalition v. Texas City Council,* 310 F.Supp. 457 (S.D.Tex.1970). In *Crowthers* the application of disorderly conduct regulations to stop a "Mass for peace" on the concourse of the Pentagon was held to be unconstitutional. The court relied on the fact that the concourse had been used for other political and religious ceremonies and stated:

Beyond question, the government may forbid all ceremonial use of the concourse or any other portion of the Pentagon. But it may not pick and choose for the purpose of selecting expressions of viewpoint pleasing to it and suppressing those that are not favored.

456 F.2d 1074, at 1078. Similarly, in *Houston Peace Coalition* the district court found that a denial of a parade permit required by ordinance violated an anti-war group's constitutional and statutory rights,

. . . since the City has allowed other groups to organize more traditional type parades, it can hardly be allowed to limit the plaintiff to a sidewalk procession merely because of the controversial nature of the political thoughts they propose to express.

310 F.Supp. 457, at 459.

■ State discretion to restrict the exercise of free speech can not be tolerated. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Frank Collin and the National Socialist Party of America v. Albert Smith et al.,* 578 F.2d —— at 1207–1208 (7 Cir. 1978).

In *Shuttlesworth* the petitioner, a Black minister, had been convicted of violating an ordinance prohibiting parades, processions, or other public demonstrations without a permit issued by the Commission of the City of Birmingham. The ordinance allowed members of the Commission to withhold permits whenever they thought action would prove threatening to the "public welfare, peace, safety, health, decency, good order, morals, or convenience" of the community. The provision was struck down.

It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of an official—is an unconstitutional cen-

sorship or prior restraint upon the enjoyment of those freedoms.

394 U.S 147, 151, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (citations omitted). *See Yenofsky v. Silk*, 305 F.Supp. 991 (D.Mass.1969) (town regulation prohibiting parade of 200 or more people except with a permit held unconstitutional for failure to limit the discretion of those with the power to issue permits).

In the case before us, the American Legion has chosen participants in the Memorial Day parade on the ground of their political views. The effect has been to cut off expression by individuals whose organization espouses a controversial doctrine. Other participants in the parade have also expressed views that some might deem political. The American Legion itself has taken many such positions. *See, e. g.*, R. Moley, *The American Legion Story* (1966); R. Baker, *The American Legion and American Foreign Policy* (1954). The Girl Scouts of America, an indispensable participant in every Memorial Day parade, favors the Equal Rights Amendment. Even firemen, whose equipment is an integral part of the procession, have an annual legislative program advanced each year in Albany.

There is no evidence that plaintiffs threatened to engage in conduct in any way unsuitable for the occasion. The testimony revealed that appropriately attired residents from the Right to Life Committee would attend. They would carry simple signs reading: "In memory of those who died, that we may have the right to life, liberty and the pursuit of happiness." By marching with these signs and by using the Right to Life name—synonymous in the public mind with anti-abortion activity—the plaintiffs would be expressing views protected by the First Amendment.

The fact that plaintiffs could have applied for and been granted permission to hold their own parade following that organized by the Legion does not provide a defense in this instance. To march separately would, as one of plaintiffs' witnesses put it, relegate them to an "undignified position, behind the sweepers." "We do not want to march behind that parade," she testified, "we want to march in that parade."

Because of the history of Memorial Day and the way these parades have been conducted in North Hempstead, plaintiffs would not enjoy equal rights unless they were allowed to participate with other members of the community. To exclude them from the main march would be to exercise a form of ostracism. It would reflect a communal disrespect for their right to espouse their views.

This kind of "inequality tends to stigmatize . . . [and] impair . . . ability to participate fully in society," requiring "justification in terms of a governmental interest of compelling importance." Karst, "Equal Citizenship Under the Fourteenth Amendment," 91 Harv.L.Rev. 1, 63 (1977). No such governmental or private interest has been suggested warranting excluding the Right to Life Group from an important community function.

If people wish to speak they have the right to do so. Under the Constitution our courts must support their right. We are reminded of the apt language of the Seventh Circuit:

> The result we have reached is dictated by the fundamental proposition that if these civil rights are to remain vital for all, they must protect not only those society deems acceptable, but also those whose ideas it . . . rejects . . . .

*Frank Collin and the National Socialist Party of America v. Albert Smith*, 578 F.2d 1197 at p. 1210 (7th Cir. 1978).

### III.  CONCLUSION

An injunction is granted restraining defendants from refusing to allow the North Shore Right to Life Committee permission to march in the 1978 Memorial Day Parade and to participate in all aspects of the services which take place on public grounds.

The right to march and speak does not imply a responsibility to exercise that right on all occasions. Sometimes respect for the sensibilities of our fellow Americans

suggests restraint in the unremitting and maximum enforcement of our constitutional rights. In a nation such as ours, its very pluralism requires some forebearance. The principles of freedom and equality must be tempered by that of fraternity if we are not to be torn apart. We do not inflict unnecessary wounds on each other. We live in peace with neighbors we differ with, sometimes by agreeing not to flaunt our disagreements on all occasions. Plaintiffs should remember that this is a parade dedicated to people who have given their lives that the nation might live in freedom. Defendants may require appropriate decorum. The parade is part of a memorial service.

So ordered.