CITY OF FITCHBURG vs. 707 MAIN CORP. & others.[1]

Worcester. November 7, 1975. — February 24, 1976.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Constitutional Law*, Freedom of speech. *Municipal Corporations*,
By-laws and ordinances. *Theatre. Contempt.*

A city ordinance forbidding the operation of a motion picture theatre
    without a license, which provided no objective standards to limit
    the mayor's discretion in granting or denying license applications,
    was unconstitutionally vague on its face. [752]
Where there was ample indication of arbitrary and capricious ad-
    ministration of a city ordinance dealing with licensing of motion
    picture theatres, this court declined to supply standards not found
    in the ordinance or its administration and held the ordinance un-
    constitutionally vague as applied. [752-754]
An adjudication of civil contempt for violation of an injunction re-
    straining the operation of a motion picture theatre without a
    license required by a city ordinance would fall with this court's
    holding that the ordinance was unconstitutionally vague since the
    plaintiff was not therefore originally entitled to equitable relief.
    [754]
An adjudication of contempt, which was not clearly civil or criminal,
    for violation of an injunction restraining the operation of a motion
    picture theatre without a license required by a city ordinance
    would fall where it could properly be assumed that this ordinance
    was void on its face. [754-755]

CIVIL ACTION commenced in the Superior Court on
February 14, 1975.

The case was heard by *Meagher*, J., and a petition for
contempt was heard by him.

The Supreme Judicial Court granted a request for
direct appellate review.

[1] Charles R. Johnson and ABC Theatre Corporation.

The case was submitted on briefs.

*Charlotte Anne Perretta* for the defendants.

*Edward T. McHugh,* Assistant City Solicitor, *Paul P. Rigopoulos,* City Solicitor, & *James T. Angelos,* Special Assistant City Solicitor, for the city of Fitchburg.

BRAUCHER, J.    The plaintiff city brought this action to enforce against the defendants an ordinance forbidding the operation of a motion picture theatre without a license.[2]    A restraining order, a preliminary injunction and

---

[2] "*Section 12-14.* The Mayor may, unless otherwise prohibited by law, grant a license for theatrical exhibitions, public shows, public amusements and exhibitions of every description, to be held upon week days only, to which admission is obtained upon payment of money or upon the delivery of any valuable thing, or in which after free admission, amusement is furnished upon deposit of money in coin controlled apparatus.    The application for such license must be in writing, fully and specifically describe the conditions of the proposed exhibition, show or amusement and the premises upon which the proposed exhibition show or amusement is to take place, to the extent that such conditions or premeses [*sic*] would affect the public safety, health, or order.    Upon written request of the Mayor the applicant shall in addition to such description furnish reasonable information concerning the condition of the premises and actions to be taken in order to prevent danger to the public safety, health, or order.

"*Section 12-15.* The Mayor shall act upon every application for a license or renewal of a license within thirty days next following the date of the filing of said application; and if he shall fail to act upon any application within the thirty days next following the date thereof or such other time as may be prescribed by law, he shall forthwith upon demand of the applicant issue or renew such license.

"*Section 12-16.* The Mayor shall grant a license unless he specifically finds and states in writing within thirty days next following the date of the filing of the application therefor that the granting of said license would lead to violations of the public safety, health, or order, and further states the specific reason or reasons for his not granting said license.    The Mayor may impose conditions upon a license but said conditions may only relate to public safety, health or order.

"*Section 12-17.* No license shall be revoked or suspended without a hearing before the Mayor or his designate, prior to which hearing the Mayor or his designate shall give reasonable notice of the time and place of the hearing and the specific grounds of the proposed revocation or suspension; provided that the Mayor may suspend a license for no more than three days without such notice or hearing if the Mayor specifically notifies the license holder in writing there is a

a permanent injunction were issued, and two of the defendants were found to be in contempt and ordered punished. We hold the ordinance unconstitutionally vague both on its face and as applied, reverse all the orders and judgments in question, and direct that judgment be entered for the defendants, dismissing the action.

On February 14, 1975, the city filed a complaint in the Superior Court, alleging that the defendant 707 Main Corp. (707) was operating a motion picture theatre without a license in violation of the ordinance, and demanding a temporary restraining order, a preliminary injunction, and a permanent injunction against such operation. An ex parte temporary restraining order was issued the same day, and a preliminary injunction was issued after hearing on February 21. Also on February 21, the city moved that 707 show cause why it should not be held in contempt of court by reason of noncompliance with the restraining order. On March 5 the city filed a petition for contempt by reason of violation of the preliminary injunction.

After a hearing on March 7, the judge found that valid service was made on 707 on February 21 and that 707 was in contempt. He assessed a fine of $500 a day from February 21 to March 7, and scheduled a further hearing for March 14. On March 14 he appointed a special master to take possession of 707's property; later he ordered the special master to conduct a hearing on March 28 to inquire into the ownership of the theatre premises. On April 16, after the special master had filed his report, a further contempt hearing was held, and the

probability of violation of public safety, health or order without such suspension. In such a case a hearing shall be held within forty-eight hours of said suspension in order to determine whether the public safety, health, or order justified such suspension.

"*Section 12-18.* Whoever offers to view, sets up, sets on foot, maintains, carries on, or otherwise assists in or promotes any such exhibition, show, or amusement without a license shall be subject to a fine of fifty dollars for each day on which such violation occurs or during which said violation continues."

judge found that Johnson, president of 707, was in contempt. After a further hearing on April 28, the judge adjudicated Johnson "in civil contempt" and sentenced him to six months in jail and to a fine of $15,000.

Also on April 28, the case was tried on the merits. The judge made findings and entered judgment enjoining 707, the ABC Theatre Corporation (ABC) and Johnson from operating the theatre without a license. 707 appealed, and we allowed its application for direct appellate review. A single justice of this court allowed a motion to add ABC and Johnson as parties.

We summarize the judge's findings. On January 23, 1975, 707 sent a letter to the mayor of the city, signed with Johnson's name. Enclosed were a check for $80, a theatre license from the Department of Public Safety, valid until September 1, 1975, and a permit from the board of health of the city, valid until April 30, 1975. The letter requested an annual theatre license and a Sunday license for motion picture entertainment for "the Fitchburg Theatre, located at 705 Main Street, Fitchburg." The letter was received in the mayor's office on January 31, and it and the check and a copy of the ordinance were returned on February 3 with a letter from the mayor, the body of which read as follows in its entirety, "Please comply with attached ordinance of the City of Fitchburg, Chapter 12." Shortly thereafter the city solicitor conferred with the theatre manager and informed him of what was required in the application for the license. No license for the theatre was issued from January 1, 1975, until trial on April 28, 1975. After the action was begun and a restraining order issued on February 14, and after a hearing on the preliminary injunction on February 21, a letter from ABC, signed by Johnson, was received by the mayor, "referring to the operation of the Fitchburg Theater at 705 Main Street as having been by ABC Corporation" in 1974 and 1975.

The judge also found that 707 never had a license, and had operated the theatre since January, 1975. The

mayor, as licensing authority, "would be confused as to who was operating the theater and who should apply for the license." This state of confusion, in the judge's view, relieved the mayor from giving reasons for refusing the application, as required by the ordinance.

1. *Validity of the ordinance on its face.* A city or town may require that motion picture theatres be licensed. G. L. c. 136, § 4, and c. 140, § 181. Expression by means of motion pictures, however, is included within the free speech and free press guaranties of the First and Fourteenth Amendments to the Constitution of the United States. *Joseph Burstyn, Inc.* v. *Wilson,* 343 U.S. 495, 502 (1952). *Brattle Films, Inc.* v. *Commissioner of Pub. Safety,* 333 Mass. 58, 60 (1955). A law which requires that the exercise of First Amendment rights be subject to license must contain narrow, objective and definite standards, or it is void for vagueness. *Shuttlesworth* v. *Birmingham,* 394 U.S. 147, 150-151 (1969), and cases cited. See *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 595 n.15 (1975).

Under § 12-14 of the ordinance the license application must "fully and specifically describe the conditions of the proposed exhibition, . . . and the premises . . . to the extent that such conditions or premeses [*sic*] would affect the public safety, health, or order." Under § 12-16 the mayor may impose conditions upon a license which "relate to public safety, health or order." The regulation of public safety, health or order is the subject of many volumes of our statutes and of additional volumes of administrative regulations. The ordinance provides no objective standards to limit the mayor's discretion in selecting the policies to be followed in granting or denying license applications. Cf. *Yenofsky* v. *Silk,* 305 F. Supp. 991, 995 (D. Mass. 1969).

2. *Validity of the ordinance as applied.* We recognize that "there are limitations in the English language with respect to being both specific and manageably brief." *United States Civil Serv. Comm'n* v. *National Ass'n of*

*Letter Carriers,* 413 U.S. 548, 578-579 (1973). On occasion we have undertaken to provide a limiting construction of a statute, so as to save it from unconstitutional vagueness. Compare *Commonwealth* v. *A Juvenile, supra* at 596-598, with *Commonwealth* v. *Horton,* 365 Mass. 164, 171-172 (1974). The Supreme Court of the United States has upheld statutes on the basis of such limiting construction where there is "no evidence that the statute has been administered otherwise than in the fair and non-discriminatory manner which the state court has construed it to require." *Cox* v. *New Hampshire,* 312 U.S. 569, 577 (1941), quoted in *Shuttlesworth* v. *Birmingham, supra* at 156. If the ordinance here in issue had been administered in a fair and nondiscriminatory manner, we should have to consider whether it could not be fairly construed so as to save it from being void for vagueness.

There is in this case ample indication of arbitrary and capricious administration of the ordinance, and hence of the danger of unfairness and discrimination which justifies the vagueness doctrine. The ordinance was enacted on October 15, 1974. No theatre licenses had been issued under it. The mayor testified that he did not know what an application should contain. There is no indication that the city had adopted any relevant standard forms or procedures. When the mayor received the January 23 letter, he regarded it as an application for a license. He did not act on the application, and did not at any time notify the applicant of his reasons. The city solicitor testified that he told the theatre manager to go to the health department, the fire department and the police department, "and get written information from them stating that they have checked over the building and as far as they are concerned it's okay in that department." He did not suggest that any objective standards were to be applied.

In these circumstances we find no suggestion that administrative practices had lent precision to the vague

terms of the ordinance. We decline to supply standards not found either in the ordinance itself or in its administration. We hold the ordinance void for vagueness both on its face and as applied.

3. *Johnson's contempt.* Johnson was unambiguously adjudicated to be in civil contempt. When it is decided by appellate reversal that the plaintiff was not originally entitled to any equitable relief, civil contempt adjudications fall with the orders violated. *Stow* v. *Marinelli,* 352 Mass. 738, 744-745 (1967), and cases cited.

4. *707's Contempt.* 707 contends that nothing in the contempt proceedings indicated clearly whether its contempt was civil or criminal, and that we should therefore treat the contempt as civil. They cite *Meranto* v. *Meranto,* 366 Mass. 720, 723-724 (1975), and *Sodones* v. *Sodones,* 366 Mass. 121, 129-130 (1974). See *Skinner* v. *White,* 505 F.2d 685, 689-690 (5th Cir. 1974). The facts alleged in the petition for contempt could have provided the basis for either a criminal contempt proceeding or a civil contempt proceeding, and we agree that there was an ambiguity in the nature of the proceeding which was never clearly resolved. See *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 259-261 (1971); *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.,* 361 Mass. 35, 36-38 (1972). Cf. *Stewart* v. *Dunn,* 363 F.2d 591, 599-600 (5th Cir. 1966). There is no showing that there was prejudice to 707 as a result of the ambiguity. See *Federal Trade Comm'n* v. *Gladstone,* 450 F.2d 913, 916 (5th Cir. 1971). In such cases, where the injunction is subsequently held invalid, we have sometimes remanded the case to enable the judge to consider whether punishment for criminal contempt remains appropriate to vindicate the court's authority. *Stow* v. *Marinelli,* 352 Mass. 738, 745 (1967). Cf. *United States* v. *Dickinson,* 465 F.2d 496, 514 (5th Cir. 1972). But punishment for violation of an injunction enforcing an invalid ordinance may not be appropriate where "the injunction was transparently invalid or had only a frivolous pretense to validity," or

where it could be "assumed that this ordinance was void on its face." *Walker* v. *Birmingham,* 388 U.S. 307, 315, 317 (1967). In the present case we think it could properly be assumed that the ordinance was void both on its face and as applied. Even though the injunction was not transparently invalid, therefore, we think the ambiguous adjudication should be treated as an adjudication of civil contempt. It therefore falls with the injunction.

5. *Disposition.* The orders and judgments appealed from are reversed, including the temporary restraining order, the preliminary injunction, the permanent injunction, the order denying the defendants' motion to dismiss, and all contempt adjudications and penalties. Judgment is to be entered for the defendants, dismissing the action.

*So ordered.*