TORRUELLA, Circuit Judge
(Dissenting).
With due respect, I disagree with my colleagues regarding whether the licenses in question are narrowly tailored. While the majority correctly recounts the holdings of both Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), and Globe Newspaper, Co. v. Beacon Hill Architectural Commission, 100 F.3d 175 (1st Cir.1996), it overstates the burden for finding that a time, place, and manner restriction is narrowly tailored. In fact, despite pronouncements to the contrary, the majority essentially elevates the narrowly tailored requirement to something approaching a least restrictive means test by requiring that proposed alternatives always be considered. The majority also ignores crucial evidence in the record which supports the district court’s finding that the licensing requirement was narrowly tailored. My own review of the evidence and the relevant law leads me to the conclusion that the City has met its burden of showing that the licenses are narrowly tailored.
The majority understands Globe Newspaper as imposing a requirement on courts to consider less burdensome alternatives in deciding whether a challenged regulation is narrowly tailored. In fact, the court did say, as the majority points out, that “less-burdensome alternatives must be considered.” 100 F.3d at 190. However, this statement can only be understood in context. In Globe Newspaper, the district court had found that a general ban on street furniture, including newspaper racks, in Beacon Hill was not narrowly tailored because less burdensome alternatives existed. 100 F.3d at 188. In overturning that decision, the court pointed out that those alternative regimes had been considered and rejected as ineffective. Id. at 188-89.[11] Simply, the lower court rested its decision on the availability of alternative regulations and ignored ample evidence showing that those alternatives were ineffective. It was against this background that the court commented that less-burdensome alternatives must be evaluated to see whether they are as effective as the challenged scheme.
Here, the situation is very different. Appellants do not challenge the City’s enactment of a general licensing scheme regulating entertainment establishments.[12] Rather, appellants complain about the City’s specific refusal to grant A & O a more comprehensive entertainment license. As part of that challenge, appellants point to the City’s noise ordinance, positing that its enforcement would be a less-burdensome alternative to a license which covers only certain forms of entertainment. There is no evidence, or even a suggestion, that the City actually considered utilizing the noise ordinance instead of the licensing scheme when it came to A *123 & O.[13] This is entirely predictable. The controversy over A & O’s application arose at a City Council meeting when the City considered the renewal of annual entertainment licenses for the coming year. It was not in the context of deciding what regulatory regime would best balance noise pollution reduction against allowing full artistic expression. To exempt A & 0 from the normal licensing scheme, in favor of utilizing the noise ordinance, would have been a strange result, to say the least.
Furthermore, existing law does not generally support the proposition that alternatives must be considered when deciding whether a regulation is narrowly tailored. In Knights of Columbus, Council No. 94 v. Town of Lexington, 272 F.3d 25 (1st Cir.2001) (hereinafter Knights of Columbus), a local group brought a challenge to a regulation that totally banned the erection of unattended structures on the historic town green. Id. The plaintiffs-appellants suggested that the town could have achieved its purpose with less restrictive alternatives. Id. at 32. However, the court concluded that the town did not have to implement or experiment with alternatives before employing a total ban. Id. at 33. In contrast to the limited restrictions in this case, Knights of Columbus presents a fairly extreme regulation. Nevertheless, the town’s failure to consider alternatives did not lead the court to find the regulation unconstitutional.
In fact, the appropriate inquiry is not whether alternatives exist, which the regulating body must show are ineffective. Rather, the inquiry is whether “the State’s articulated rationale - actually supports restrictions placed on particular conduct.” New England Council of Carpenters v. Kinton, 284 F.3d 9, 27 (1st Cir.2002); accord Gun Owners’ Action League, Inc. v. Swift, 284 F.3d 198, 212 (1st Cir.2002) (upholding a ban on using human-shaped targets at certain gun clubs under intermediate scrutiny without considering less restrictive alternatives); Knights of Columbus, 272 F.3d at 33. Certainly, that inquiry can include an examination of the alternatives considered by regulating body, see, e.g., Globe Newspaper, 100 F.3d at 188-89, but not every case, requires such an inquiry. This is one such case.
The record clearly shows that the City limited A & O’s' license in response to neighborhood complaints about excessive noise. In fact, despite these complaints, the City gave A & O the same license it had in the prior year.[14] The City just refused the request for an expanded license. The record supports only one inference: that the City balanced the interests of A & O against those of its neighbors. This was entirely appropriate. See Nat’l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 744 (1st Cir.1995) (“[The regulation] promotes the substantial government interest of preserving tranquility — an interest that, as [the town’s] past experience demonstrates, would not be achieved as effectively absent the regulation.”).
*124 Furthermore, even if I were to adopt the majority’s conclusion that the City must show that available alternatives were ineffective, I would find that the City has met its burden. The majority concludes that “the City gave no explanation as to why it could not have relied on this less-burdensome alternative [enforcing the noise ordinance] to the no-amplification restriction.” Actually, the record clearly shows that the noise ordinance was ineffective. A & 0 had violated the noise ordinance only once, but the neighbors complained about incessant noise. One neighbor told the City, “So, I don’t even think it’s an issue of violation of any Noise Ordinance, it’s just the fact that we didn’t have this noise before and now we do and we have to deal with it and we don’t like it.” The noisé ordinance clearly failed to address the community’s concerns and, as such, cannot be considered an effective alternative.[15]
While believing the record clearly shows that the noise ordinance is ineffective, I reiterate my earlier point: the City only needs to show that the issued licenses were narrowly tailored to the problem and not that all available alternatives are ineffective. Regardless of the standard employed, the City clearly meets its burden, and the judgment of the district court should be affirmed. Therefore, I respectfully dissent.

. A similar situation confronted the Supreme Court in Ward. There, New York City specifically considered a variety of solutions to its excessive noise problem and rejected all of them as ineffective. 491 U.S. at 785-87, 109 S.Ct. 2746.

. I further note that it is very unlikely that such a challenge could survive, given that such schemes are generally within a city's powers. Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115, 1121 (1st Cir.1981) (holding that "licensing of routine commercial operations in an attempt to limit noise, traffic and disruption is clearly within a state’s constitutional power”).

. The record does suggest that the City had addressed its concerns about noise pollution in another forum: a Noise & Nuisance Task Force. The reference to this task force is fairly ambiguous, and neither side presents further information about its conclusions or its actual purpose. Furthermore, there is no suggestion, by either side, that this task force dealt specifically with the problem posed by A & O. From the limited information available, it appears that this task force addressed only general concerns.

. Originally, the City did place an additional restriction on A & O's license by forbidding singing. However, the record is clear that this restriction was lifted shortly after it was imposed and that it was imposed on the mistaken belief that the prior license had not included permission for a vocalist.

. Contrary to the majority's assertion, I do not find that the City considered and rejected the noise ordinance as ineffective. Rather, I simply find that the noise ordinance is ineffective, apart from any consideration by the City.