Connolly, J.
The plaintiff, Barbara MacNeil (“Mac-Neil”), filed an application with the Boston Inspectional Services Department (“ISD”) for a conditional use permit that would allow her to offer tattooing services at her existing place of business, The Shed (“The Shed”), on Dorchester Street in South Boston. The ISD denied her application and MacNeil appealed the decision to the defendant, the Boston Board of Appeal (“BOA”). The BOA denied her application for a permit after a public hearing. MacNeil filed a complaint in this Court challenging the constitutionality of the body art establishment zoning ordinance in the Boston Zoning Code (“the Code”). The matter is now before this Court on MacNeil’s motion for partial summary judgment as well as the defendants Zoning Commission of Boston (“the Zoning Commission”) and the City of Boston’s (“the City”) cross motion for partial summary judgment. For the following reasons, MacNeil’s motion is ALLOWED and the defendants’ motion is DENIED.
BACKGROUND
In two recent decisions by this Court, tattooing was found to be expressive conduct entitled to constitutional protection under the First Amendment to the United States Constitution. Commonwealth v. Meuse, 10 Mass. L. Rptr. 661, 1999 WL 1203793 (Mass.Super. Nov. 29, 1999) (van Gestel, J.); Lanphear v. Commonwealth, Mem. Decision and Ord., DocketNo. 99-1896-B (Mass.Super. Oct. 20, 2000) (Rouse, J.). In response to these two decisions, a memorandum (“the Memorandum”) dated February 15,2001 was sent from staff members to the Director of the Boston Redevelopment Authority (“BRA”) proposing that the Director petition the Zoning Commission to adopt text amendments to the Code. As a result, the BRA proposed that the Zoning Commission amend the Code to provide definitions and use regulations concerning the practice of tattooing because “there will undoubtedly be requests to open up these types of businesses. The proposed amendment will make body art establishments a conditional use in many areas of the city including the downtown districts and commercial areas of the Neighborhood districts. They would be forbidden in all residential districts and allowed in the general and restricted industrial (’M’ and T) districts.” The Memorandum, at 1.
The Code was so amended and now any location, place or business where the practice of tattooing is performed is deemed a “body art establishment.” Under the Code as amended, body art establishments are an allowed use in the General Industrial subdistrict; a conditional use in the Local and General Business subdistrict; a conditional use in Restricted Industrial subdistrict; and a conditional use in the Waterfront Industrial Sub-District.[2] The Code, Art. 8, §8-7, No. 43A (“Art. 8”). Body art establishments are forbidden in all Residential subdistricts and in the Maritime Economy Reserve subdistrict of the Industrial district. Id.
In order to operate a body art establishment in one of the conditional use subdistricts, a conditional use permit must be obtained. If a permit for a body art establishment is denied, the applicant may appeal to the BOA in accordance with Article 6 of the Code, §6-3, entitled “Conditions Required for Approval” (“Art. 6”). Art. 6 provides that the BOA “shall” grant an appeal for a conditional use permit “only if it finds that all of the following conditions are met:
(a) the specific site is an appropriate location for such use . . . ;
(b) the use will not adversely affect the neighborhood;
(c) there will be no serious hazard to vehicles or pedestrians from the use;
(d) no nuisance will be created by the use;
(e) adequate and appropriate facilities will be provided for the proper operation of the use.
MacNeil owns and operates The Shed, a small retail store engaged in the business of selling used music compact discs and records. The Shed is located on a commercial street in South Boston, within a General Business subdistrict. On April 30, 2001, MacNeil filed an application with the ISD for a conditional use permit that would allow her to convert the Shed into a body art establishment. On June 1, 2001, her application was denied by the ISD. The ISD stated that “your application requires relief from the Board of Appeal as same would be in violation of the Boston Zoning Code to wit . . . Article 8, Section 7 Use: 43A Body Art Establishment (Conditional).” MacNeil filed *154 a timely notice of appeal with the BOA on or about June 11, 2001.
Public hearings were held on or about August 21, 2001 and October 30, 2001 to discuss MacNeil’s application. During the hearings, MacNeil presented evidence that she intended to open a body art establishment at the Shed and that she would be willing to put certain conditions on her permit: She would not use any outside signage; she would have limited hours during which she offered body art services; and persons under 21 would not receive body art without a parent present. In a written decision dated February 19, 2002, the BOA denied MacNeil’s request for a permit. The BOA stated as grounds for its decision that:
[MacNeil] did not advance sufficient reasons to satisfy the Board that all the conditions under which the Board may grant a Conditional use permit as specified in Article 6, Section 6-3 of the Zoning Code have been met, nor to cause the Board to come to the conclusion that this is a case where the specific site is an appropriate location for such use, nor that the use will not adversely affect the neighborhood, nor that the use will not cause serious hazard to vehicles or pedestrians, nor that no nuisance will be created by the use, nor that adequate and appropriate facilities will be provided for the proper operation of the use.
On March 20, 2002, MacNeil filed a complaint with this Court challenging the BOA’s decision. Her complaint alleges that Art. 8 confers unlimited discretion on the permit-granting authority in violation of the First and Fourteenth Amendments to the United States Constitution and articles 10 and 16 of the Massachusetts Declaration of Rights (Count I); that the defendants’ enactment of Art. 8 violates MacNeil’s right to due process under the Fourteenth Amendment to the United States Constitution and article 10 of the Massachusetts Declaration of Rights because it does not bear a rational relationship to any permissible legislative purpose (Count II); that Art. 8 fails to serve a substantial governmental interest in violation of the First Amendment to the United States Constitution and article 16 of the Massachusetts Declaration of Rights (Count III); that Art. 8 is not narrowly tailored to serve any governmental interest (Count IV); that Art. 8 fails to allow for a reasonable alternative avenue for tattooing in the City (Count V); that the defendant Zoning Commission enacted Art. 8 with the intent of suppressing the rights of free expression guaranteed under the First Amendment to the United States Constitution and article 16 of the Massachusetts Declaration of Rights (Count VI); that the defendants’ actions violate 42 U.S.C. §1983 and 42 U.S.C. §1988 (Count VII); and, finally, that by denying MacNeil a permit, the BOA acted arbitrarily and capriciously and abused its discretion with the intent of burdening her rights under the First Amendment to the United States Constitution and article 16 of the Massachusetts Declaration of Rights (Count VIII). MacNeil now moves for partial summary judgment, arguing that Art. 8 violates the First Amendment to the United States Constitution because the Zoning Commission had no pre-enactment evidence of a substantial government interest before it at the time of the passage of the ordinance; and that Art. 8 violates the First and Fourteenth Amendments to the United States Constitution because it fails to provide narrow, objective and definite standards to guide the Zoning Commission in its decisions whether to grant a conditional use permit. The defendants, the Zoning Commission and the City, filed a cross motion for summary judgment on these issues.
DISCUSSION
This Court grants a motion for summary judgment where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Id. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summaiy judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Substantial Government Interest
MacNeil argues that Art. 8 is unconstitutional under the First Amendment of the United States Constitution because the City and the Zoning Commission failed to consider any evidence of a substantial government interest justifying the restrictions on Body Art Establishments before it enacted Art. 8.
As a preliminary matter, tattooing is a protected form of expression under the First Amendment and art. 16 of the Massachusetts Declaration of Rights. Lanphear, supra; Meuse, supra. In order to analyze a First Amendment challenge to a zoning ordinance, this Court must first determine whether the ordinance is content-based or content-neutral. The United States Supreme Court “has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment... On the other hand, so-called ‘content-neutral’ time, place and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.” Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986); T&D Video, Inc. v. City of Revere, 423 Mass. 577, 581 (1996). The issue presented here is whether *155 the City’s body art establishment ordinance impermissibly infringes on the protection to which body art establishments are entitled.
This Court finds that the City’s purpose in creating Art. 8, i.e. regulating, was unrelated to the content of any tattooing expression. Thus, Art. 8 is content-neutral. City of Boston v. Back Bay Cultural Ass’n, Inc., 418 Mass. 175, 179 (1994) (the “principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys”), citing Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (a statute is content neutral only if “it is ‘justified without reference to the content of the regulated speech’ ”).
Evidence concerning the governmental interest underlying a time, place and manner (content-neutral) ordinance is relevant only when it consists of information that the City considered in making its determination to enact an ordinance. T&D Video, Inc., 423 Mass, at 581, citing Krueger v. Pensacola, 759 F.2d 851, 855 (11th Cir.) (“The government must also show that the articulated concern had more than merely speculative factual grounds, and that it was actually a motivating factor in the passage of the legislation”). “Mere conclusions asserted after an ordinance’s enactment regarding the secondary effects of [tattooing] are insufficient to show that the ordinance was designed to serve a substantial governmental interest.” Id. The summary judgment record must show facts supporting the secondary effects of the establishment which the ordinance is designed to protect against. See D.H.L. Assoc., Inc. v. O’Gorman, 6 F.Sup.2d 70, 75-76 (1998).
The City and Zoning Commission contend that the design and purpose of Art. 8 is evident from the City’s enabling act, which provides that:
A zoning regulation shall be designed among other purposes to lessen the congestion in the streets; to conserve health; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewage, schools, parks and other public requirements; to conserve the value of land and buildings; to encourage the most appropriate use of land throughout the city; and to preserve and increase its amenities.
1956 Mass. Acts 665, §2.
The City and Zoning Commission also point out that three members of the Zoning Commission are required to have served as a member of a governing body of a residential neighborhood organization that has as a principal purpose the preservation of the quality of residential life, apparently suggesting that the desire to preserve the integrity of the community is the substantial government interest here.[3] While it is true that “a city’s interest in attempting to preserve the quality of urban life is one that must be accorded high respect,” there is no evidence of pre-enactment discussion of this substantial governmental interest. Young v. American Mini Theatres, 427 U.S. 50, 71 (1976).
The summary judgment record indicates that the City and the Zoning Commission, in adopting Art. 8, discussed (1) the recent repeal of the prohibition against tattoo parlors; (2) definitions of body art; and (3) general concerns of the need to enact regulations to address the public health risks associated with tattooing. There was little pre-enactment discussion by the government concerning the designation of a body art establishment as a conditional use. The only comment about that designation, in fact, appears in the Memorandum and states, “there will undoubtedly be requests to open up these types of businesses. The proposed amendment will make body art establishments a conditional use in many areas of the city including the downtown districts and commercial areas of the Neighborhood districts. They would be forbidden in all residential districts and allowed in the general and restricted industrial (’M’ and T) districts.” The only other mention of the conditional use designation appears in the minutes of the public hearings. Here, it was confirmed that body art establishments “would be forbidden in residential districts, conditional in all other, except the T district.” Also, a comment was made that, because the Restricted Industrial subdistrict had “become more commercial and residential than industrial in nature, so the conditional designation is more appropriate.” The minutes of the public hearings and internal memorandums do not indicate that there was any discussion of the secondary effects of body art establishments prior to the enactment of Art. 8.[4] The remainder of the legislative record consists of the Department of Public Health’s concern with public health and sanitation. Thus, there is insufficient evidence that the City and Zoning Commission’s conditional use designation was designed to serve any substantial governmental interest and for that reason the body art establishment ordinance, Art. 8, §8-7, No. 43A of the Boston Zoning Code, is unconstitutional. As such, we do not reach the issue of whether there are adequate alternative avenues of communication.
II. Unlimited Discretion of the Permit-Granting Authority
MacNeil also argues that body art establishments’ conditional use designation constitutes a prior restraint on protected speech.[5] Specifically, MacNeil argues that the five factors described in Art. 6 of the Code are not narrow, objective and definite standards for the permit-granting authority to follow.
While generally a content-neutral regulation is not subject to scrutiny under the prior restraint analysis, given that Art 8 requires body art establishments to *156 obtain a permit in order to operate, “such a method of zoning combined with licensing may constitute a prior restraint on speech, generally subjected to the substantially stricter review for constitutionality than a time, place, and manner restriction.” D.H.L. Assoc., Inc. v. O’Gorman, 199 F.3d 50, 56 n.3 (1st Cir. 1999), citing 1126 Baltimore Boulevard, Inc. v. Prince George’s County, Md., 58 F.3d 988, 995 (4th Cir. 1995) (“following the decision in Renton, the Court has made clear that otherwise valid content-neutral time, place, and manner restrictions that require governmental permission prior to engaging in protected speech must be analyzed as prior restraints and are unconstitutional if they do not limit the discretion of the decision maker and provide . . . for procedural safeguards”).
“Any government regulation that limits or conditions in advance the exercise of protected First Amendment activity constitutes a form of prior restraint. . . and any such restraint comes ‘bearing a heavy presumption against its constitutional validity.’ ” Fantasy Bookshop, Inc. v. City of Boston, 652 F.2d 1115, 1120 (1981), citing Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 552-58 (1976). A scheme that places “unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.” Lakewood v. Plain Dealer Publ’g Co., 486 U.S. 750, 757 (1988). “It is settled by a long line of recent decisions of [the United States Supreme Court] that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official — as by requiring a permit or license which may be granted or withheld in the discretion of such official — is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.” Staub v. City of Baxley, 355 U.S. 313, 322 (1958). “The First Amendment demands that such regulations contain narrow, objective, and definite standards to guide the licensing authoriiy.” New Eng. Reg’l Council of Carpenters v. Kinton, 284 F.3d 9, 21 (1st Cir. 2002); The Black Rose, Inc. v. City of Boston, 433 Mass. 501, 505 (2001).
As noted above, Art. 6 requires that the BOA “shall” grant an appeal for a conditional use permit “only if it finds that all of the following conditions are met:
(a) the specific site is an appropriate location for such use . . . ;
(b) the use will not adversely affect the neighborhood;
(c) there will be no serious hazard to vehicles or pedestrians from the use;
(d) no nuisance will be created by the use;
(e) adequate and appropriate facilities will be provided for the proper operation of the use.
Art 6.
First, Art. 6 makes it clear that when the enumerated conditions are met, the permit “shall” be granted. This language ensures that the BOA does not have the discretion to deny such a permit when all of the requirements have been met. Cf. Warner v. Chuha, (Super.Ct. No. 02-01522, April 15, 2004) (Bumes, J.). Factors (c), (d), and (e) describe a behavioral effect of at least potential objective specificity. While the “hazards” or “nuisance” to vehicles or pedestrians are not identified, such a description is susceptible to objective interpretation. Further, requiring “adequate and appropriate facilities” is also susceptible to objective interpretation, and, thus, meaningful judicial review.
The first and second factors, by contrast, authorizes denial of a license on the basis of an unspecified assessment of a site that is “an appropriate location for such use” and a use that will “not adversely affect the neighborhood.” These factors may well represent expansion of the “no serious hazard to vehicles or pedestrians,” “no nuisance,” and “adequate and appropriate facilities will be provided for the proper operation of the use” standards. However, unlike the others, these two standards comprise purely subjective evaluations of wholly unrestricted factors, and thus vest the denial of a permit in the essentially unbridled discretion of the BOA. Where a license is necessary for the exercise of protected activity such a standard cannot withstand constitutional scrutiny. Reprod. Rights Network v. President of Univ. of Mass., 45 Mass.App.Ct. 495, 510 n.6 (1998), citing Southeastern Promotions, Ltd., 420 U.S. at 548 (municipal theatre’s standard of accepting applications in the “best interests of the community” standard held unconstitutionally vague); see also Shuttlesworth v. City of Birmingham, 394 U.S. 147, 149 (1969) (“public welfare, peace, safety, health, decency, good order, morals or conscience” standard held vague).
Generally, “[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities . . . Nevertheless, a town’s zoning power ‘must be exercised within constitutional limits.’ ” D.H.L. Assoc., Inc., 199 F.3d at 56 (internal citations omitted). This Court thus finds that factors (a) and (b) are facially invalid.
III. MacNeil’s §1983 claim
MacNeil also seek attorneys fees under 42 U.S.C. §§1983 and 1988. Section 1983 provides a federal cause of action against every person who under the color of State law deprives another person of any rights, privileges, or immunities guaranteed by the Constitution or the laws of the United States. A municipality may be liable under §1983, Monell v. Dep’t of Social Servs. of New York, 436 U.S. 658, 688 (1978), but only if the injury is caused by “officials whose acts may fairly be said to be those of the municipality,” or if there is a municipal policy or custom that caused the injury. County Comm'r of Bryan County v. Brown, *157 520 U.S. 397, 403-04 (1997). Here, both conditions are met.
Section 1988 authorizes a court, in its discretion, to award reasonable attorneys fees to a prevailing party in any action to enforce a provision of §1983. A court’s discretion in this regard is limited, however. Pernini Corp. v. Comm’r of Revenue, 419 Mass. 763, 772 (1995); citing Blanchard v. Bergeron, 489 U.S. 87, 89 n. 1 (1989). A court should deny a prevailing party attorneys fees only if there are special circumstances which would render an award unjust. Id. Therefore, MacNeil is entitled to attorneys fees.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Plaintiffs motion for partial summary judgment is ALLOWED. It is further ORDERED that the Defendants, Zoning Commission of Boston’s and the City of Boston’s, cross motion for partial summary judgment is DENIED. It is further ORDERED that a declaration enter declaring that the City of Boston’s Zoning Code as it designates body art establishments a conditional use is unconstitutional as violative of the First Amendment of the U.S. Constitution, applicable to the states through the Fourteenth Amendment.
The Plaintiff is to file an affidavit(s) of fees and costs within 30 days of receipt of this order. Said affidavit is to contain an itemization of all hours spent on this case and the reasons for such expenditures of time as well as the hourly rate of the attorneys. The Defendants, if they wish, may file a counteraffidavit and/or memorandum in opposition within 20 days of the filing of plaintiffs affidavit(s).

The term “allowed use" permits that particular use in that area as of right. The Code, Art. 8, §8-2. The term “conditional use” requires that the person or entity seeking to use a building or property for that use receive prior approval from the BOA. The Code, Art. 8, §8-3.

The City also points out that it uses the same criteria to determine whether to grant conditional use permits to, among other places, photography studios, museums, restaurants and movie theatres. But because tattooing is entitled to First Amendment protection, this Court must analyze the City’s interest in regulating body art establishments under a stricter standard.

In their memorandum in support of their cross motion for summary judgment, the City and the Zoning Commission stress their concern with the secondary effects of tattoo parlors, calling tattoo parlors “magnets of organized crime activity” whose existence “threatens the integrity of commercial districts.” However, post-enactment arguments concerning secondary effects are irrelevant. T&D Video, Inc., 423 Mass at 581.

The court notes that while MacNeil alleges in her complaint that Art. 8, alone, is unconstitutional, her memorandum in support of summary judgment regarding the issue of a prior restraint centers on Art. 6 of the Code. Art. 6 provides the criteria to be considered by the permit-granting authority when determining whether to grant a conditional use permit. Art. 8, on the other hand, describes the districts where a Body Art Establishment may be zoned. For purposes of this decision, the Court deals with both Art. 6 and Art. 8.