MacLeod-Mancuso, Bonnie H., J.
This matter is before the Court on Plaintiff Cheryl Voigt’s (Voigt) motion for partial summary judgment, pursuant to Mass.R.Civ.P. 56, against Defendant Ciiy of Medford (City). For the reasons stated below, Voigt’s motion for partial summary judgment is ALLOWED.

BACKGROUND

On September 3, 2004, Voigt filed an application for a special permit with the Medford Ciiy Council pursuant to the Medford Revised Ordinances (ordinance), §94-81.[3] The purpose of the ordinance and the special permit process is “(t]o promote the health, safety, morals, convenience and general welfare of [the City’s] inhabitants, to lessen the danger from fire, congestion, and confusion, and to improve and beautify the ciiy under and pursuant to the provisions of M.G.L.A.c. 40A . . .” Section 94-1. Voigt sought a special permit to operate a tattoo and body piercing establishment at 13 Forest Street in Medford. The site is located in a Commercial (C-l) Zoning District.
On December 7, 2004, the Ciiy held a public hearing on Voigt’s petition. After evidence was presented at the hearing, the council voted four to three to refer the matter to the Committee of the Whole (Committee).[4] On December 15, 2004, the Committee met to discuss the matter. The Committee voted by a vote of four to three to conduct a public hearing on the petition at the next Council Meeting.[5] That hearing was held on December 21, 2004. At the hearing, the City Councilors denied Voigt’s petition after voting four in the affirmative and three in the negative.[6]
During the December 21, 2004 hearing, some of the City Councilors voiced concerns with Voigt’s petition. Carr stated that certain unidentified people in the community did not want a tattoo establishment in Medford Square. Camuso commented that he was concerned about the generation and disposal of medical waste, especially in light of the nearby Boys and Girls’ Club. Camuso was also concerned that the proposed use would create parking problems. Marks expressed concerns regarding Voigt’s history of complying with state sanitation code requirements with her prior employer, the House of Pain in Everett, MA, where she was the general manager. Marks also stated that the proposed use of a tattoo parlor did not fit with his vision of Medford Square.
Voigt filed suit with this Court against, the City on January 18, 2005. Voigt alleged four counts in her complaint: violations of the Equal Protection Clause of the Fourteenth Amendment (count one), violations of Voigt’s right to free speech under the First Amendment to the United States Constitution and the Massachusetts Declaration of Rights (count two), violation of 42 U.S.C. §1983 (count three), and violations of G.L.c. 40A and the Medford Zoning Ordinance (count four). Voigt now seeks summary judgment on counts one, two, and three of her complaint.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).

I. First Amendment Protection

The First Amendment to the U.S. Constitution protects speech, including conduct, if the conduct is expressive and sufficiently communicative in nature. See Spence v. Washington, 418 U.S. 405, 409-10 (1974). While the U.S. Supreme Court has not directly addressed whether tattooing qualifies as protected First Amendment activity, this Court has held that tattooing is a protected form of expression under the First Amendment and Article 16 of the Massachusetts Declaration of Rights. See MacNeil v. The Board of Appeal of Boston, Civil No. 02-01225 (Suffolk Super.Ct. Aug. 9, 2004) (Connolly, J.) [18 Mass. L. Rptr. 153]; Lanphear v. Commonwealth, No. 99-1896-B, slip op. (Suffolk Super.Ct. Oct. 20, 2000) (Rouse, J.); Commonwealth v. Meuse, Cr. No. 98-02639 (Essex Super.Ct. Nov. 29, 1999) (van Gestel, J.) [10 Mass. L. Rptr. 661] (“Tattooing is recognized by government agencies as both an art form and a profession and tattoo-related art work is the subject of museum, gallery and educational institution art shows across the United States ... Tattooing cannot be said to be other than one of the many kinds of expression so steadfastly protected by our Federal and State Constitutions”). This Court has no difficuliy in agreeing that tattooing constitutes expression protected by the First Amendment.

II. Prior Restraint

Any government regulation that limits or conditions in advance the exercise of protected First Amendment activity constitutes a form of prior restraint which bears a heavy presumption against its constitutional validity. See Fantasy Book Shop, Inc. v. City of Boston 652 F.2d 1115, 1120 (1st Cir. 1981), citing Southeastern Promotions, Ltd v. Conrad, 420 U.S. 546, 552-58 (1976). Not all prior restraints, however, are impermissible. Id. Con *124 tent-neutral time, place, and manner regulations are permissible so long as they are narrowly tailored to serve a substantial government interest and do not unreasonably limit alternative avenues of expression. See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984); United States v. O’Brien, 391 U.S. 367, 377 (1968). A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has incidental effects on some speakers or messages but not others. See Renton v. Playtime Theaters, Inc., 475 U.S. 41, 47-48 (1986). Furthermore, restrictions on the time, place, or manner of protected speech are not invalid “simply because there is some imaginable alternative that might be less burdensome on speech.” Ward v. Rock Against Racism, 491 U.S. 781, 797 (1989), quoting United States v. Albertini, 472 U.S. 675, 689 (1985). The restrictions need not be the least restrictive or least intrusive means available “so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.” Id. at 798-99 (quotation and citation omitted).
If an ordinance is not per se unconstitutional as a prior restraint, then the court should examine the ordinance on its face to determine whether its procedural and substantive features are constitutionally valid or constitute an unconstitutional prior restraint. See Fantasy Book Shop, Inc., 652 F.2d at 1121. A licensing or permitting scheme which places unbridled discretion in the hands of a government official or agency constitutes a prior restraint upon Constitutional freedoms. See FW/PBS, Inc. v. Dallas, 493 U.S. 215, 225-26 (1990); Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 757 (1998). Standards that are impermissibly vague and that fail to provide “narrow, definite and objective” standards, are likewise unconstitutional. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51 (1969); Fantasy Book Shop, Inc., 652 F.2d at 1122.
Although the ordinance here is a prior restraint, it is a permissible prior restraint. The City ordinance is content-neutral because it does not aim to restrict expressive activity on the basis of its content. The purpose of the ordinance is to protect the public health, safety, and welfare and “to lessen the danger from fire, congestion, and confusion, and to improve and beautify the city.” While the ordinance has secondary effects on expressive conduct, the ordinance was not enacted to suppress certain ideas and shall be considered content-neutral. Further, the ordinance is narrowly tailored to serve a substantial government interest. See City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806 (1984) (government has a substantial interest in protecting its citizens from unwelcome noise); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08 (1981) (court held traffic safety and the appearance of the city to be substantial government interests); Fantasy Book Shop, Inc., 652 F.2d at 1121 (ordinance’s objectives to limit noise, traffic, and disruption were important interests entirely unrelated to the suppression of expression). The ordinance burdens no more speech than is necessary to accomplish its purpose and it leaves open alternative channels of communication. Therefore, the ordinance is not per se unconstitutional as a prior restraint.
Voigt argues that the ordinance is unconstitutional on its face for two reasons: (1) it vests unbridled discretion in the City Council to decide whether to grant a special permit; and (2) the ordinance, specifically §94-81(f), does not contain narrow, objective, and definite standards sufficient to pass constitutional muster. The City contends that if ordinances §§94-1, 94-81(a), and 94-81(f) are read together, the Court will find that the City has articulated precise standards for the City Council to follow when granting or denying a special permit. This Court finds the City’s argument unavailing.
The language of §94-81(f) is undeniably vague in establishing the requirements which must be met for the City Council to grant a special permit.[7] In MacNeil, this Court (Connolly, J.) found that the same exact language articulated in the first two prongs of §94-81(f) vested unbridled discretion in the Board of Appeal of Boston (BOA) in the context of Article 6 of the Boston Zoning Code, §6-3.[8] Civil No. 02-01225. The MacNeil court held that the ordinance was an unconstitutional prior restraint because the BOA was guided by subjective standards. Id. Similarly, this Court finds that the first two factors articulated in §94-81 (f) “comprise purely subjective evaluations of wholly unrestricted factors, and thus vest the denial of a [special] permit in the essentially unbridled discretion of the [City Council].” See id. The ordinance is thus unconstitutional on its face as a prior restraint of Voigt’s First Amendment rights.[9]

III. Attorneys Fees under 42 U.S.C. §§1983, 1988

Section 1983 provides a federal cause of action against every person who under the color of State law deprives another person of any rights, privileges, or immunities guaranteed by the Constitution or the laws of the United States. A municipality may be liable under §1983 if the injury is caused by “officials whose acts may fairly be said to be those of the municipality,” or if there is a municipal policy or custom that caused the injury. County Comm’r of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997); Kadlick v. Dep’t of Mental Health, 431 Mass. 850, 852 (2000). Here those conditions have been met because the City deprived Voigt of her First Amendment right of expression through the acts of the City Council.
Section 1988 authorizes a court, in its discretion, to award reasonable attorneys fees to a prevailing party in a litigation to enforce a provision of §1983. A court should deny a prevailing party’s request for attorneys fees only if there are special circumstances that would render an award unjust. See Pernini Corp. v. Comm’r of Revenue, 419 Mass. 763, 772 (1995), citing Blanchard v. Bergeron, 489 U.S. 87, 89 n.l (1989). No such special circumstances exist here and Voigt is therefore entitled to reasonable attorneys fees.

*125
ORDER

For the reasons stated above, it is hereby ORDERED that Voigt’s motion for partial summary judgment is ALLOWED. It is further ORDERED that a declaration enter declaring that the City of Medford’s Revised Ordinance 94-81 is unconstitutional because it violates the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment.
The Plaintiff is to file an affidavit(s) of fees and costs within 30 days of receipt of this order. Said affidavit is to contain an itemization of all hours spent on this case and the reasons for such expenditures of time as well as the hourly rate of the attorney(s). The Defendants, if they wish, may file a counter affidavit and/or memorandum in opposition within 20 days of the filing of Plaintiff s affidavit(s).

Medford Revised Ordinances, §94-81(a) sets forth the procedure by which an applicant shall apply for a special permit with the city council. Section 94-148 requires all body art establishments to seek a special permit from the city council to conduct business. Section 94-81 (f) states:
special permits shall only be approved if the city council or board of appeals finds that in its judgment all of the following general rules are complied with:
(1) The particular site is an appropriate location for such a use, structure, or condition.
(2) The use as developed will not adversely affect the neighborhood.
(3) There will be no nuisance or serious hazard to vehicles or pedestrians.
(4) Adequate and appropriate facilities will be provided for the proper operation of the proposed use.

City Councilors Stephanie Muccini Burke (Burke), Robert A. Maiocco (Maiocco), Breanna Lungo (Lungo), and Robert Penta (Penta) voted in the affirmative and Councilors Michael J. Marks (Marks), Paul Camuso (Camuso), and William Carr (Carr) voted in the negative.

City Councilors Burke, Maiocco, Lungo, and Penta voted in the affirmative, and Councilors Marks, Camuso, and Carr voted in the negative.

General Laws, chapter 40A, section 9 requires a two-thirds vote in order for a special permit to issue in boards with more than five members. Here, the Board was comprised of seven members and four voted in favor of Voigt, which rendered Voigt’s petition one vote short of approval. City Councilors Burke, Maiocco, Lungo, and Penta voted in the affirmative, and Councilors Marks, Camuso, and Carr voted in the negative.

Section 94-81(f) states:
special permits shall only be approved if the city council or board of appeals finds that in its judgement (sic) all of the following general rules are complied with:
(1) The particular site is an appropriate location for such a use, structure, or condition.
(2) The use as developed will not adversely affect the neighborhood.
(3) There will be no nuisance or serious hazard to vehicles or pedestrians.
(4)Adequate and appropriate facilities will be provided for the proper operation of the proposed use
(Emphasis added.)

The Boston Zoning Code, Article 6, §6-3 states that the BOA shall grant an appeal for a conditional use permit
only if it finds that all of the following conditions are met: (a) the specific site is an appropriate location for such use
(b) the use will not adversely affect the neighborhood:
(c) there will be no serious hazard to vehicles or pedestrians from the use;
(d) no nuisance will be created by the use;
(e) adequate and appropriate facilities will be provided for the proper operation of the use.
MacNeil, Civil No. 02-01225.

Voigt contends that the ordinance, as applied by the City Council, violated her right to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution. Because this Court has already concluded that the ordinance is unconstitutional on its face, it need not address this argument.